**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

KENNETH MCMASTER,

                              Plaintiff,                  No. 9:15-CV-578
                                                   (DNH/CFH)

        v.

L. W. LABARGE, et al.,

                               Defendants.

---

**APPEARANCES:**                        **OF COUNSEL:**

Kenneth McMaster
08-B-1832
Southport Correctional Facility
P.O. Box 2000
Pine City, New York 14871
Plaintiff pro se

Hon. Eric T. Schneiderman             BRIAN W. MATULA, ESQ.
Attorney General for the              Assistant Attorney General
  State of New York
The Capitol
Albany, New York 12224
Attorney for Defendant

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

### REPORT-RECOMMENDATION AND ORDER[1]

      Plaintiff pro se Kenneth McMaster ("plaintiff"), an inmate who was, at all relevant

times, in the custody of the New York Department of Corrections and Community

Supervision ("DOCCS") brings this action pursuant to 42 U.S.C. § 1983, alleging that

---

[1] This matter was referred to the undersigned for Report-Recommendation and Order pursuant to
28 U.S.C. § 636(b) and N.D.N.Y. L.R. 72.3(c).

corrections officer ("C.O.") L.W. LaBarge, C.O. S. D. Lamare, C.O. E. Smith, C.O. K. Ellsworth, Lieutenant ("Lieut.") J. G. Tatro, Sergeant ("Sgt.") M. C. Tompkins, and Sgt. C. S. Rowe – who, at all relevant times, were employed at Upstate Correctional Facility ("Upstate") – violated his constitutional rights under the First and Eighth Amendments. See Dkt. No. 1 ("Compl."). Presently pending before the Court is defendant's Motion for Partial Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."). Dkt. No. 80. Plaintiff opposed the motion, and defendants filed a reply. Dkt. Nos. 89, 91. For the following reasons, it is recommended that defendants' motion be granted in part and denied in part.

## I. Background

## A. Plaintiff's Recitation of the Facts

The facts are related herein in the light most favorable to plaintiff as the nonmoving party. See subsection II.A. infra. Plaintiff contends that on November 15, 2014, Sgt. Tompkins and Lieut. Tatro transported plaintiff to the Office of Mental Health ("OMH") room within the prison infirmary. Compl. at 7. Once inside the room, C.O. LaBarge, C.O. Lamare, C.O. Ellsworth, and C.O. Smith subjected him to excessive force and raped him in retaliation for plaintiff's prior grievances against C.O. LaBarge. Id. Sgt. Tompkins, Sgt. Rowe, and Lieut. Tatro watched the assault, but did not intervene. Id. The next day, while plaintiff was still in the OMH room, C.O. Lamare and C.O. Smith physically assaulted plaintiff. Id. at 8. At an unspecified time, plaintiff informed Sgt. Rowe and two non-party nurses of C.O. LaBarge, C.O. Lamare, C.O. Ellsworth, and C.O. Smith's assault and rape that occurred on

November 15, 2014 and November 16, 2014.  Id.  On November 17, 2014, plaintiff returned

to his cell.  Id.  Plaintiff suffered injuries as a result of the excessive force, including a "bone

sticking out [of his] left foot," as well as burns and scratches.  Id.


## B. Defendants' Recitation of the Facts

In support of this motion, defendants filed a Statement of Material Facts.[2]  In 2012,

plaintiff filed a grievance against C.O. LaBarge for spitting in his juice, requesting to see his

"private parts," and "threatening to do something to [him]."  Dkt. No. 80-1 ¶ 3-4; Dkt. No. 80-2

at 15.  The 2012 grievance was deemed "closed," and no staff misconduct was found.  Dkt.

No. 80-1 ¶ 4; Dkt. No. 80-3 at 5-6.  On November 15, 2014, plaintiff was escorted from the

---

[2] Local Rule 7.1(a)(3) states:

Summary Judgment Motions

Any motion for summary judgment shall contain a Statement of Material
Facts.  The Statement of Material Facts shall set forth, in numbered
paragraphs, each material fact about which the moving party contends
there exists no genuine issue. Each fact listed shall set forth a specific
citation to the record where the fact is established. The record for
purposes of the Statement of Material Facts includes the pleadings,
depositions, answers to interrogatories, admissions and affidavits.

The opposing party shall file a response to the Statement of Material
Facts. The non-movant's response shall mirror the movant's Statement
of Material Facts by admitting and/or denying each of the movant's
assertions in matching numbered paragraphs. Each denial shall set forth
a specific citation to the record where the factual issue arises. The
non-movant's response may also set forth any additional material facts
that the non-movant contends are in dispute. Any facts set forth in the
Statement of Material Facts shall be deemed admitted unless specifically
controverted by the opposing party.

N.D.N.Y. L.R.  7.1(a)(3).

Special Housing Unit ("SHU")[3] to the infirmary for a mental health evaluation.  Dkt. No. 80-1 ¶ 2, 21; Dkt. No. 80-2 at 13-14, 21.  C.O. Smith did not attend work on November 15, 2014, and, therefore, was not personally involved in the alleged incident on that day.  Dkt. No. 80-1 ¶ 9; Dkt. No. 80-7 ¶ 4.

## II. Discussion[4]

### A. Legal Standards

"A court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  The moving party has the burden of showing the absence of disputed material facts by providing the Court with portions of "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which support the motion.  FED. R. CIV. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  A fact is material if it may affect the outcome of the case as determined by substantive law, such that "a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  "In determining whether summary judgment is appropriate, [the Court will] resolve all ambiguities and draw all reasonable inferences

---

[3] SHUs exist in all maximum and certain medium security facilities.  The units "consist of single-occupancy cells grouped so as to provide separation from the general population . . . ."  N.Y. Comp. Codes R. & Regs. tit 7, § 300.2(b).  Inmates are confined in a SHU as discipline, pending resolution of misconduct charges, for administrative or security reasons, or in other circumstances as required.  Id. at pt. 301.

[4] All unpublished opinions cited in this Report-Recommendation and Order, unless otherwise noted, have been provided to plaintiff.

against the moving party." <u>Skubel v. Fuoroli</u>, 113 F.3d 330, 334 (2d Cir. 1997).

To avoid summary judgment, a non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." <u>Carey v. Crescenzi</u>, 923 F.2d 18, 19 (2d Cir. 1991) (quoting <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986)) (internal quotation marks omitted). A non-moving party must support such assertions by evidence showing the existence of a genuine issue of material fact. <u>See id.</u> "When no rational jury could find in favor of the non-moving party because the evidence to support is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." <u>Gallo v. Prudential Services, Ltd. P'ship</u>, 22 F.3d 1219, 1224 (2d Cir. 1994).

Where, as here, a party seeks judgment against a <u>pro se</u> litigant, a court must afford the non-movant special solicitude. <u>See</u> <u>Triestman v. Fed. Bureau of Prisons</u>, 470 F.3d 471, 477 (2d Cir. 2006). As the Second Circuit has stated,

> [t]here are many cases in which we have said that a <u>pro se</u> litigant is entitled to "special solicitude," . . . that a <u>pro se</u> litigant's submissions must be construed "liberally," . . . and that such submissions must be read to raise the strongest arguments that they "suggest," . . . . At the same time, our cases have also indicated that we cannot read into <u>pro se</u> submissions claims that are not "consistent" with the <u>pro se</u> litigant's allegations, . . . or arguments that the submissions themselves do not "suggest," . . . that we should not "excuse frivolous or vexatious filings by <u>pro se</u> litigants," . . . and that <u>pro se</u> status "does not exempt a party from compliance with relevant rules of procedural and substantive law . . . .

<u>Id.</u> (citations and footnote omitted); <u>see also</u> <u>Sealed Plaintiff v. Sealed Defendant</u>, 537 F.3d 185, 191-92 (2d Cir. 2008).

**B. Exhaustion**

As a threshold matter, defendants argue that plaintiff has failed to exhaust his administrative remedies as to "most of his claims." Dkt. No. 80-5 ("Def. Mem. of Law") at 6-9. Defendants argue that because plaintiff failed to exhaust his administrative remedies as to his November 15, 2014 excessive force, retaliation, and failure to intervene claims and his November 16, 2014 excessive force claims, those claims must be dismissed. Id. at 8. Specifically, defendants contend that (1) although plaintiff filed a grievance regarding the alleged incident on November 15, 2014, he failed to appeal the decision pursuant to DOCCS policy; and (2) plaintiff failed to file a grievance as to the alleged incident on November 16, 2014. Id.

Plaintiff claims that he exhausted his administrative remedies "to the best of his ability to do so." Dkt. No. 89-4 ("Pl. Opp.") at 5. Plaintiff further suggests that under Second Circuit precedent, defendants' reliance on the check mark "no" in the box questioning whether he exhausted his administrative remedies in his form complaint is misplaced. Dkt. No. 89-4 ("Pl. Opp.") at 5-6. Plaintiff argues that he "submitted grievances" regarding the alleged incidents, and "tried to complete any and all steps properly." Id. at 7. In reply, defendants argue that plaintiff "failed to provide the Court with any documentation that would create an issue of fact as to whether [he] exhausted his administrative remedies with regard to these two incidents." Dkt. No. 91 ("Def. Reply") at 4. Defendants also argue that plaintiff has not established that the grievance process at Upstate was unavailable. Id.

It is undisputed that on November 18, 2014, plaintiff filed a grievance, UST-55238-14, regarding the November 15, 2014 "rape[ ] [and] physical[ ] assault[ ] by correction officer[s]

L.W. LaBarge, S. Lamare, E. Smith and several other correction officer[s]." Dkt. No. 80-4 at 2. On November 25, 2014, plaintiff filed a grievance seeking the return of his wrist brace, a "front cuff order," and requesting medical care for injuries sustained in the alleged "rape [ ] [and] assault[ ] situation." Id. at 4. The Inmate Grievance Resolution Committee ("IGRC") consolidated the November 18, 2014 and the November 25, 2014 grievances. See id. at 2, 4. On December 22, 2014, nonparty Superintendent Donald G. Uhler denied plaintiff's grievance, concluding that "no misconduct by staff was found." Id. at 1.

The Prison Litigation Reform Act ("PLRA") requires that a prisoner exhaust any administrative remedies available to him or her before bringing an action for claims arising out of his or her incarceration. See Porter v. Nussle, 534 U.S. 516, 524 (2002); see also Woodford v. Ngo, 548 U.S. 81, 82 (2006). The exhaustion requirement applies "to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter, 534 U.S. at 532. Further, the exhaustion requirement applies even where the prisoner seeks relief not available in the administrative grievance process, such as monetary damages. Id. at 524. To exhaust administrative remedies, the inmate must complete the full administrative review process set forth in the rules applicable to the correctional facility in which he or she is incarcerated. See Jones v. Bock, 549 U.S. 199, 218 (2007) (internal citation omitted).

Although the Supreme Court has deemed exhaustion mandatory, the Second Circuit has recognized that "certain caveats apply." Ruggiero v. Cty. of Orange, 467 F.3d 170, 175 (2d Cir. 2006) (citation omitted). The Supreme Court recently held that "[c]ourts may not engraft an unwritten 'special circumstances' exception onto the PLRA's exhaustion

requirement." <u>Ross v. Blake</u>, __ U.S. __,136 S. Ct. 1850, 1862 (2016).  Thus, the "special circumstances" exception in <u>Hemphill v. New York</u>, 680 F.3d 680, 686 (2d Cir. 2004) is no longer consistent with the statutory requirements of the PLRA.  <u>Williams v. Priatno</u>, 829 F.3d 118, 123 (2d Cir. 2016).[5]

Although <u>Ross</u> eliminates the "special circumstances" exception, courts must still consider the PLRA's "textual exception to mandatory exhaustion." <u>Ross</u>, 136 S. Ct. at 1858. Under this exception, courts must determine whether administrative remedies were "available" to a prisoner. <u>Id.</u>  The Supreme Court identified three circumstances where administrative remedies may be unavailable to a prisoner.  First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end — with officers unable or consistently unwilling to provide any relief to aggrieved inmates." <u>Id.</u> at 1859 (citing <u>Booth v. Churner</u>, 532 U.S. 731, 736, 738 (2001)).  "Next, an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." <u>Id.</u>  Lastly, administrative remedies are unavailable where "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." <u>Id.</u> at 1860.

---

[5] In <u>Williams v. Priatno</u>, the Second Circuit debated <u>Ross</u>'s effect on <u>Hemphill</u>'s estoppel exception. <u>See Williams</u>, 829 F.3d at 123.  The <u>Williams</u> Court stated that "<u>Ross</u> largely supplants our <u>Hemphill</u> inquiry by framing the exception issue entirely within the context of whether administrative remedies were actually available to the aggrieved inmate." <u>Id.</u> (citing <u>Ross</u>, 136 S. Ct. at 1858-59).

## 1. Did Plaintiff Exhaust his Administrative Remedies?[6]

### a. November 15, 2014 Incident

Both parties concede that plaintiff completed the first level of the grievance process — filing a grievance with the IGRC — about the alleged November 15, 2014 incident.  Def. Mem. of Law at 8; Pl. Opp. at 5.  However, defendants argue that plaintiff failed to appeal that grievance "as required by DOCCS policy."  Def. Mem. of Law at 8.  In opposition, plaintiff has proffered a copy of the December 22, 2014 Superintendent's decision with a completed appeal statement, dated January 1, 2015.  See Dkt. No. 89-2 at 7-8.  Moreover, plaintiff provided correspondence with Inmate Grievance Program ("IGP") Supervisor Scott W. Woodward and Brandi L. Collyer, and, in a letter dated February 9, 2015, plaintiff states "I've also appealed grievance # UST-55238-14 to you, to go to CORC[ ] over 34 days ago so what happened with that?!"  Id. at 12.  On April 21, 2015, plaintiff wrote to IGP Supervisor Woodward and Ms. Collyer: "I am writing [due] to the fact I [would] like to know what's going on with my grievance # UST-55238-14[ ] that I appealed to CORC on Jan. 1, 2015, what's going on?"  Id. at 13.  On May 7, 2015, plaintiff further inquired as to whether grievance

---

[6] First, the inmate must file a complaint with an inmate grievance program ("IGP") clerk within twenty-one days of the alleged incident.  N.Y. COMP. CODES R. & REGS. tit. 7, § 701.5(a)(1).  An IGP representative has sixteen calendar days to informally resolve the issue.  Id. § 701.5(b)(1).  If no informal resolution occurs, the IGRC must hold a hearing within sixteen days of receipt of the grievance and must issue a written decision within two working days after the conclusion of the hearing.  Id. §§ 701.5(b)(2)(i)-(ii).  If the determination is unfavorable to the inmate, the inmate may appeal the IGRC's determination to the facility superintendent within seven calendar days of receipt of the determination.  Id. § 701.5(c)(1).  If the superintendent's determination is unfavorable, the inmate may appeal to CORC within seven days after receipt of the superintendent's determination.  Id. §§ 701.5(d)(i)-(ii).  CORC must review each appeal, render a decision on the grievance, and transmit its decision to the facility, with reasons stated, for the [inmate], the grievance clerk, the superintendent, and any direct parties within thirty (30) calendar days from the time the appeal was received."  Id. § 701.5(d)(3)(ii).  Parties do not dispute that at all relevant times, DOCCS had in place a three-step inmate grievance program.  N.Y. COMP. CODES R. & REGS. tit. 7, § 701.5.

UST-55238-14 had been appealed to CORC. Id. at 14.  Finally, on June 25, 2015, plaintiff requested "a receipt of [ac]knowledge[ment]" for both his letter and the appeal of grievance UST-55238-14 due "to the fact that [his] mail[ ] [was] being played with." Id. at 15.  The bottom of the letter contains a note from Ms. Collyer which states, "I have received both CORC appeals." Id.  Defendants contend that "none of the providewd documents can fairly be read as . . . an appeal statement to C.O.R.C. concerning the November 15, 2014 incident." Def. Reply at 3.  Thus, the record is unclear as to whether plaintiff appealed the November 15, 2014 incident to CORC. See id.

Viewing the facts in the light most favorable to plaintiff, the record implies that plaintiff's grievance and/or appeal as to the incident on November 15, 2014 was submitted, but was unfiled or unanswered, creating an issue of fact as to whether the grievance process was available, and, thus, whether administrative remedies were available to plaintiff. See Williams, 829 F.3d at 126 (concluding that "the process to appeal an unfiled and unanswered grievance is prohibitively opaque, such that no inmate could actually make use of it."); Thaxton v. Simmons, No. 9:10-CV-1318 (MAD/RFT), 2013 WL 4806457, at *4 (N.D.N.Y. Sept. 9, 2013) ("[A] question of fact exists as to whether [p]laintiff never filed his initial grievance on April 29, as [d]efendants claim, or that, as [p]laintiff claims, he filed a timely grievance that was lost or tampered with by [d]efendants.  Such credibility assessments are to be resolved by a trier of fact.").  Accordingly, the undersigned recommends that defendants' Motion for Partial Summary Judgment on this ground as to the incidents on November 15, 2014 be denied, without prejudice and with the opportunity to renew by way of an exhaustion hearing, should defendants request such a hearing.

### b. November 16, 2014 Incident

As to the November 16, 2014 incident, plaintiff testified that he filed two grievances regarding the alleged excessive force that occurred on that date.  Dkt. No. 80-2 ("Pl. Dep.") at 68.  In a December 3, 2014 letter to IGP Supervisor Woodward, plaintiff advised that it was his "third time submitting these two (2) grievances for [ ] being denied [ ] medical care, and [ ] being physically assaulted and raped."  Dkt. No. 89-2 at 6.  The undersigned notes that although this letter in and of itself does not amount to exhaustion at any level, see Geer v. Chapman, No. 9:15-CV-952 (GLS/ATB), 2016 WL 6091699, at *5 (N.D.N.Y. Sept. 26, 2016), report and recommendation adopted, 2016 WL 6090874 (N.D.N.Y. Oct. 18, 2016) (citing Macias v. Zenk, 495 F.3d 37, 44-45 (2d Cir. 2007) ("It is well-settled that writing letters to prison officials, or other officials, is insufficient to properly exhaust administrative remedies.")), it suggests that plaintiff may have repeatedly attempted to file a grievance as to the November 16, 2015 excessive force incident, and that grievance was unfiled and unanswered.  See Griffith v. Selsky, 325 F. Supp. 2d 247, 250 (W.D.N.Y. 2004) ("'[I]t appears that plaintiff did make 'reasonable attempts' to file and prosecute his grievances. There is no indication that he simply bypassed the grievance procedure; on the contrary, plaintiff has well documented his efforts to grieve the matters at issue here, and it appears that DOCS simply ignored many of his grievances and inquiries.'") (quoting Lane v. Doan, 287 F. Supp. 2d 210, 212-13 (W.D.N.Y. 2003)); Evans v. Nassau Cty., 184 F. Supp. 2d 238, 245 (E.D.N.Y. 2002) ("Accordingly, the Court finds that it cannot determine whether [the plaintiff] availed himself of the inmate grievance procedure available at the Nassau County Correctional Facility and declines to dismiss [his] claims . . . on the exhaustion ground at this

11

time."). However, plaintiff fails to mention the November 16, 2014 assault in all further communication with the IGP Supervisor, and all other letters mention only the November 15, 2014 grievance. See Dkt. No. 89-2 at 5-15. Further, absent from the record is any explicit mention of a grievance for the November 16, 2014 assault.

Insofar as plaintiff alleges that his grievances regarding the incident on November 16, 2014 were thrown out by Upstate corrections officers, Pl. Opp. at 7, these allegations do not "relieve him of the requirement to appeal [his] claims to the next level once it became clear to him that a response to his initial filing was not forthcoming." Veloz v. New York, 339 F. Supp. 2d 505, 516 (S.D.N.Y. 2004) ("Drawing all inferences in plaintiff's favor, the Court concludes that plaintiff failed to make reasonable attempts to fully exhaust his available administrative remedies . . . [as (1)] there is no evidence whatsoever that any of these grievances were filed with a grievance clerk . . . [; (2) the plaintiff] offers no evidence that any particular officer thwarted his attempts to file; he simply contends that the practice of destroying or misplacing grievances must have been the cause of his grievances being lost . . . [; and (3) the] plaintiff's allegation that these particular grievances were misplaced or destroyed by correctional officers ultimately does not relieve him of the requirement to appeal these claims to the next level once it became clear to him that a response to his initial filing was not forthcoming.") (citing Martinez v. Williams, 186 F. Supp. 2d 353, 357 (S.D.N.Y.2002) ("Plaintiff's argument that he is excused because defendants failed to act with respect to the grievance is unpersuasive. Plaintiff could have and should have appealed the grievance in accordance with grievance procedures."); Rodriguez v. Cross, No. 15-CV-1079 (GTS/CFH), 2017 WL 2791063, at *7 (N.D.N.Y. May 9, 2017) ("Plaintiff's bare

assertions [that the defendants removed grievances from the mailbox to cover up their use of excessive force] do not excuse exhaustion requirements.   Courts in this Circuit have continuously held that mere contentions or speculation of grievances being misplaced by officers do not create a genuine issue of material fact when there is no evidence to support the allegations.").   As plaintiff has failed to proffer evidence that he filed grievances relating to the November 16, 2014 incident, and his bare assertions that prison officials may have tampered with or discard his grievances are insufficient to render the grievance process unavailable, defendants have met their burden of showing that plaintiff has failed to exhaust his administrative remedies as to the November 16, 2014 incident of excessive force and failure to intervene.   Accordingly, it is recommended that defendants' Motion for Partial Summary Judgment be granted as to plaintiff's claims of excessive force and failure to intervene arising out of the November 16, 2014 incident.

## C. Retaliation

Plaintiff contends that C.O. LaBarge subjected him to excessive force in retaliation for grievances plaintiff filed against him in 2012. See Compl. at 7. Defendants argue that "plaintiff cannot possibly establish that assaults two years later had any plausible connection with those grievances." Def. Mem. of Law at 10.

Courts are to "approach [First Amendment] retaliation claims by prisoners 'with skepticism and particular care[.]'" See, e.g., Davis v. Goord, 320 F.3d 346, 352 (2d Cir. 2003) (quoting Dawes v. Walker, 239 F.3d 489, 491 (2d Cir. 2001), overruled on other grounds by Swierkiewicz v. Sorema, N. A., 534 U.S. 506 (2002)).   A retaliation claim under

13

Section 1983 may not be conclusory and must have some basis in specific facts that are not inherently implausible on their face. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); South Cherry St., LLC v. Hennessee Grp. LLC, 573 F.3d 98, 110 (2d Cir. 2009). "To prove a First Amendment retaliation claim under Section 1983, a prisoner must show that '(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action.'" Espinal v. Goord, 558 F.3d 119, 128 (2d Cir. 2009) (quoting Gill v. Pidlypchak, 389 F.3d 379, 380 (2d Cir. 2004), overruled on other grounds by Swierkiewicz, 534 U.S. at 560)).  In order to prove an adverse action, a plaintiff must show that the defendant's "'retaliatory conduct . . . would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights . . . . Otherwise, the retaliatory act is simply de minimis, and therefore outside the ambit of constitutional protection.'" Roseboro v. Gillespie, 791 F. Supp. 2d 353, 366 (S.D.N.Y. 2011) (quoting Dawes, 239 F.3d at 292-93). If the plaintiff meets this burden, the defendants must show, by a preponderance of the evidence, that they would have taken the adverse action against the plaintiff "even in the absence of the protected conduct." Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977). "Types of circumstantial evidence that can show a causal connection between the protected conduct and the alleged retaliation include temporal proximity, prior good discipline, finding of not guilty at the disciplinary hearing, and statements by defendants as to their motives." Barclay v. New York, 477 F. Supp. 2d 546, 558 (N.D.N.Y. 2007).

    To satisfy the first element of a retaliation claim, a plaintiff must show that he engaged in a protected activity.  See Espinal, 558 F.3d at 128.  The Second Circuit has concluded

14

that use of the prison grievance system constitutes a protected activity.  See Gill, 389 F.3d at 384; Franco v. Kelly, 854 F.2d 584, 589 (2d Cir. 1988) ("Moreover, intentional obstruction of a prisoner's right to seek redress of grievances is precisely the sort of oppression that section 1983 is intended to remedy.") (alteration and internal quotation marks omitted); see also Roseboro, 791 F. Supp. 2d at 367 (finding that the filing of a grievance is a protected activity); Mateo v. Fischer, 682 F. Supp. 2d 423, 433 (S.D.N.Y. 2010) (same). The undersigned notes – and the defendants concede – that plaintiff's filing of a grievance constitutes a protected activity under the First Amendment.  See Def. Mem. of Law at 10.

However, as to whether defendants' alleged adverse action was causally connected to plaintiff's protected conduct, defendants contend that the two years between the filing of the grievance and the alleged assault is insufficient to establish temporal proximity.  See Def. Mem. of Law at 10.  In assessing temporal proximity, the Second Circuit "has not drawn a bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship between the exercise of a federal constitutional right and an allegedly retaliatory action."  Gorman-Bakos v. Cornell Co-op Extension of Schenectady Cty., 252 F.3d 545, 554 (2d Cir. 2001).  Still, the Court has established that, generally, six months or fewer between the protected activity and the adverse action supports an inference of causal connection.  See Espinal, 558 F.3d at 129 ("Here, we find that the passage of only six months between the dismissal of [the plaintiff's] lawsuit and an allegedly retaliatory beating by officers, one of whom [ ] was a defendant in the prior lawsuit, is sufficient to support an inference of a causal connection."); see also Vecchione v. Dep't of Educ. of N.Y.C., No. 10 Civ. 6750 (GBD), 2014 WL 2116146, at *5 (S.D.N.Y. May 16, 2014)

(concluding that a gap of "more than six months" between the protected activity and the adverse action is insufficient to establish a causal connection). Two years between plaintiff's grievance against C.O. LaBarge and the alleged assault is too attenuated to support an inference of a causal connection. See Espinal, 558 F.3d at 129; Kasiem v. Rivera, No. 09 Civ. 9665(DLC), 2011 WL 166929, at *7 (S.D.N.Y. Jan. 18, 2011) (dismissing the plaintiff's retaliation claim where the adverse action occurred nearly two years after the protected conduct as "twenty months is too long a gap in time to support [an inference of causation]."); Moore v. Kwan, No. 12-CV-4120 (VSB), 2016 WL 9022575, at *15 (S.D.N.Y. Mar. 30, 2016) (finding one year and six months too attenuated to establish causation); cf. Jordan v. Garvin, No. 01CIV4393LTS/GWG, 2004 WL 302361, at *6 (S.D.N.Y. Feb. 17, 2004) ("[T]he existence of a temporal connection as close as the one present here – just two days – is sufficient by itself to establish the requisite inference of a causal connection."). However, even assuming plaintiff could establish retaliatory motive via temporal proximity, "without more, such temporal proximity is insufficient to satisfy [the plaintiff's] burden to bring forward some evidence of pretext." Simpson v. N.Y.S. Dep't of Civil Servs., 166 F. App'x 499, 502 (2d Cir. 2006) (summary order).

   In further support of his claim of retaliatory intent, plaintiff testified that prior to the November 15, 2014 assault, C.O. LaBarge stated, "now is [the] time to get [you] back from before," and during the November 15, 2014 assault, C.O. LaBarge stated, "I told you I will get you." Dkt. No. 80-2 at 21, 40. Although these statements do not explicitly reference the 2012 grievance, plaintiff contends that "it shows [that] [C.O. LaBarge's] mind [ ] was still stuck on the 2012 grievances"; thus, he argues that a question of fact arises as to whether

C.O. LaBarge had retaliatory intent.  See Pl. Opp. at 9

Defendants argue that C.O. LaBarge's alleged statements are "irrelevant to the transfer of the [p]laintiff to his cell in OMH where the alleged adverse action is alleged to have occurred" as documentary evidence shows that a physician ordered plaintiff admitted to the OMH psychiatric unit for observation.   Def. Reply at 3-4 (citing Dkt. No. 91-2 at 1). To the extent that plaintiff contends the transfer to OMH is the adverse action associated with his retaliation claim, the undersigned finds that defendants have demonstrated that plaintiff would have been transferred for psychiatric observation absent any retaliatory motivation.  See Barclay, 477 F. Supp. 2d at 558 (quoting Gayle v. Gonyea, 313 F.3d 677, 682 (2d Cir. 2002)) ("Once plaintiff [has established a prima face case for retaliation], the burden shifts to the defendants to establish that the discipline would have been imposed 'even absent the retaliatory motivation.'").  However, the undersigned is of the belief that the retaliatory adverse action to which plaintiff refers is not the OMH transfer, rather, his claim of excessive force and rape.   Thus, insofar as plaintiff contends that the defendants' excessive force and rape are the adverse actions associated with his retaliation claim, defendants have failed to demonstrate that they would have used such force against plaintiff "even absent [any] retaliatory motivation."  Id.

Viewing the facts in the light most favorable to plaintiff, a fact-finder could conclude that C.O. LaBarge's statements demonstrate that he assaulted plaintiff in retaliation for prior grievances plaintiff filed in 2012.  Therefore, because a genuine issue of material fact exists regarding C.O. LaBarge's retaliatory intent, it is recommended that defendants' Motion for Partial Summary Judgment be denied as to plaintiff's First Amendment retaliation claim

against C.O. LaBarge.  <u>See</u> <u>Rivera v. Lawrence</u>, No. 9:05-CV-0967 (TJM/GHL), 2009 WL 1734735, at *5 (N.D.N.Y. June 18, 2009) (finding, on a motion for summary judgment, that it was "reasonable to infer from Defendant's alleged statements that he may have acted with a retaliatory motive.") (citing <u>Ahlers v. Grygo</u>, No. 02-CV-3256 (JG)(LB), 2009 WL 691927, at *7 (E.D.N.Y. Mar. 13, 2009) ("Although this temporal proximity might be less probative in a prisoner retaliation case, . . . it is not [the plaintiff's] only evidence of retaliatory intent.  [The defendant's] statements concerning his motivation are obviously relevant to this issue, and [the plaintiff] contends that when [the defendant] heard that he was assisting [a fellow inmate], he made remarks such as 'what goes around, comes around' and 'payback is a bitch' to [the plaintiff].") (citing <u>Colon</u>, 58 F.3d at 873 (holding that disparity between the affidavits of a prisoner and corrections officer "itself creates a credibility issue that is not readily amenable to resolution on summary judgment"))).

### D. Personal Involvement

#### 1. C.O. Smith

Defendants argue that C.O. Smith was not present at Upstate on November 15, 2014, and, therefore, could not have participated in the alleged excessive force and rape that occurred that night.  Def. Mem. of Law at 11.  Defendants do not move for summary judgment as to plaintiff's excessive force claims arising out of the November 16, 2014 incident.  <u>See</u> <u>id.</u>[7]  As defendants note, plaintiff alleges that he was face down during the

---

[7] However, as discussed <u>supra</u>, it is recommended that this claim be dismissed for failure to exhaust administrative remedies.  <u>See</u> Discussion II.B.1.b. <u>supra</u>, at 11-13.

November 15, 2014 assault and that C.O. Smith stood behind him, but that he "did not recall seeing C.O. Smith face to face until November 16."   Def. Reply at 7; Pl. Opp. at 11. Moreover, C.O. Smith declared that he "did not report to work at Upstate" in the evening of November 15, 2014, and proffered a time card that demonstrates he "swap[ped]" shifts with "King." Dkt. Nos. 80-7 at 1; 80-8 at 2.[8]

Plaintiff seems to concede that "if the DVD from the infirmary [ ] shows defendant E. Smith wasn't there [on November 15], defendant cannot be said to have been personally involved in the Constitutional deprivation . . . [and] could be dismissed from the November 15, 2014 incident without prejudice." Pl. Opp. at 12.  In response, plaintiff has not produced evidence creating a genuine issue of material fact as to whether C.O. Smith was present during the alleged November 15, 2014 assault.  See Cicio v. Lamora, No. 9:08-CV-431 (GLS/DEP), 2010 WL 1063875, at *8 n.6 (N.D.N.Y. Feb. 24, 2010) (dismissing the plaintiff's claims against the defendant "on the independent basis of his lack of personal involvement in the alleged constitutional violation" where the defendant "submitted an affidavit indicating that he was not present during the course of the incident, and [the] plaintiff has offered no evidence to the contrary.").  Moreover, there is no video of the alleged November 15, 2014 incident before the Court.[9]   Thus, because the undersigned finds that plaintiff has not demonstrated C.O. Smith's personal involvement in the November 15, 2014 claim of

---

[8] To the extent that plaintiff wishes to bring new claims against "King" for the alleged November 15, 2014 excessive force incident, he must file for leave to amend his complaint.  See Pl. Opp. at 11-12; FED. R. CIV. P. 15(a).

[9] Defendants affirm that plaintiff has reviewed all video footage of the incident, including the escort video of plaintiff from his cell to the OMH cell. Dkt. No. 91-1 ¶ 3.  This video, however, is not before the Court.  Video cameras in the OMH cell were not operational until 2015 – one year after the events in plaintiff's complaint.  Id.

excessive force, it is recommended that defendants' Motion for Partial Summary Judgment be granted as to plaintiff's excessive force claim against C.O. Smith arising out of the alleged November 15, 2014 incident.

### III. Conclusion

**WHEREFORE**, for the reasons stated herein, it is hereby

**RECOMMENDED**, that defendants' Motion for Partial Summary Judgment (Dkt. No. 80) be **GRANTED IN PART**:

(1) Insofar as it seeks dismissal of plaintiff's excessive force claims against C.O. Smith and C.O. Lamare arising out of the November 16, 2014 incident for nonexhaustion,

(2) Insofar as it seeks dismissal of plaintiff's excessive force claims against C.O. Smith arising out of the alleged November 15, 2014 incident, the motion be **GRANTED**, and C.O. Smith be **DISMISSED** from this action with prejudice; and it is further

**RECOMMENDED**, that defendants' Motion for Partial Summary Judgment (Dkt. No. 80) be **DENIED IN PART**:

(1) Insofar as it seeks dismissal of plaintiff's First Amendment retaliation claim against C.O. LaBarge, the motion be **DENIED,**

(2) Insofar as it seeks dismissal of plaintiff's excessive force and failure to intervene claims against C.O. Lamare, C.O. LaBarge, C.O. Ellsworth, Lieut. Tatro, Sgt. Tompkins, and Sgt. Rowe for the incidents alleged to have occurred on November 15,

2014 due to nonexhaustion, the motion be **DENIED** without prejudice to defendants'
ability to request an exhaustion hearing to assess whether plaintiff exhausted his
administrative remedies, and it is,

    **ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation
and Order on all parties in accordance with Local Rules.

    **IT IS SO ORDERED**.

    Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen
days within which to file written objections to the foregoing report.  Such objections shall be
filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN
FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. Roldan v. Racette, 984
F.2d 85, 89 (2d Cir. 1993) (citing Small v. Secretary of Health and Human Servs., 892 F.2d
15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); FED R. CIV. P. 6(a), 6(e), 72.[10]

    Dated: April 10, 2018
    Albany, New York

Christian F. Hummel
U.S. Magistrate Judge

---

[10] If you are proceeding pro se and are served with this Order by mail, three additional days will be
added to the fourteen-day period, meaning that you have seventeen days from the date the Order was
mailed to you to serve and file objections. FED. R. CIV. P. 6(d).  If the last day of that prescribed period
falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day
that is not a Saturday, Sunday, or legal holiday.  Id. § 6(a)(1)(C).

21